IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

KEITH E. SNYDER,                    :
                                    :
                Petitioner,         :
                                    :   CIVIL NO. 3:CV-07-825
          v.                        :
                                    :   (JUDGE VANASKIE)
EDWARD KLEM,                        :
                                    :
                Respondent.         :


MEMORANDUM

        Keith E. Snyder, an inmate presently confined at the State Correctional Institution,

Mercer, Pennsylvania, commenced this habeas corpus proceeding  pursuant to 28 U.S.C. §

2254.  Petitioner is represented by counsel.  Oral argument was conducted in this matter on

April 20, 2010.  For the reasons that follow, the habeas corpus petition will be denied.

Background

        On July 2,1984, Petitioner's wife Diane and their six (6) week old son Brian died of

carbon monoxide poisoning caused by a fire in their residence.  The bodies were discovered in

the master bedroom.  After autopsies were performed, the Luzerne County Coroner ruled that

the manner of the deaths was criminal homicide.  (Dkt. Entry # 14-10 at 4.)  It is undisputed that

the fire was incendiary in nature.  During the ensuing criminal investigation, two significant

issues arose concerning Petitioner's alleged culpability:  the burn time of the fire and the

presence of alcohol and the drug, Tuinal, in Diane Snyder's bloodstream.

Between 1984 and 1986, a special grand jury empaneled in Luzerne County investigated several criminal matters, including the deaths of Mrs. Snyder and her infant son. An August 1986 unanimous report by the grand jury concluded that, although there was unequivocal evidence that the fire was set deliberately, there was insufficient evidence to support an indictment against Keith Snyder. Over the course of the next several years (during the terms of three different district attorneys), there were no new material developments in the case.

With a new District Attorney taking office in Luzerne County in January, 1992, came renewed interest and action in the Snyder investigation. An investigation team was assembled, witnesses were re-interviewed; physical evidence was gathered, and experts were consulted. On September 8, 1993, approximately eleven (11) years and two (2) months following the death of his wife and son, the Commonwealth filed a criminal complaint charging Petitioner with arson and two counts of murder.

A motion to dismiss on the basis of pre-arrest delay was filed by Petitioner. Following a hearing, the motion to dismiss was denied by the trial court on the grounds that the delay had not resulted in substantial prejudice to Snyder. (Id. at 6.)

During Snyder's June 1994 jury trial in the Luzerne County Court of Common Pleas, he maintained that, based upon the time line established by the Commonwealth, it was not possible for him to have set the fire. Petitioner further contended that his wife had committed

suicide and that the prolonged passage of time had prejudiced his ability to present that defense.[1] Mr. Snyder was convicted of arson and two counts of first degree murder. He was sentenced to two (2) consecutive life sentences on October 3, 1994.

On September 13, 1995, Snyder's conviction and sentence were affirmed by the Pennsylvania Superior Court. <u>Commonwealth v. Snyder</u>, 671 A.2d 773 (Pa. Super. 1995) (Table). Thereafter, in a 4 to 3 decision, the Pennsylvania Supreme Court concluded that "the Commonwealth's failure to file these charges sooner resulted in actual prejudice to the Appellant [Mr. Snyder] in presenting his defense at trial." <u>Commonwealth v. Snyder</u>, 713 A.2d 596, 603 (Pa. 1998). Based upon that determination, the Supreme Court remanded the matter with instructions that a hearing be conducted by the trial court as to whether the Commonwealth had "valid reasons to justify filing these charges after this extensive period of time."[2] <u>Id</u>. at 606.

On August 6 and 7, 1998, an evidentiary hearing was conducted in the Luzerne County Court of Common Pleas. The Commonwealth called as witnesses the five Luzerne County District Attorneys who served during the relevant time period, a Pennsylvania State Police

---

[1] Autopsy results revealed the presence of alcohol and Tuinal, a barbiturate, in Mrs. Snyder's blood.

[2] Three Justices joined in a concurring and dissenting opinion which likewise found that Petitioner suffered actual prejudice as a result of the pre-arrest delay, adding that because the Commonwealth had already been afforded sufficient opportunity during a pre-trial hearing to introduce reasons for the delay and had failed to adequately justify the delay, they "would vacate the judgment of sentence and discharge Appellant." <u>Id</u>. at 606.

Investigator, and the Wright Township Police Chief. The District Attorneys testified as to the action taken (or lack thereof) with respect to the investigation during their respective administrations. They also similarly indicated that the delays in the investigation and prosecution were not for the purpose of gaining a tactical advantage.

Testimony presented during the hearing by former District Attorney Olszewski established that he restarted the investigation in 1992. Under his direction, there were interviews of some 80 persons who had not been previously questioned; consultation with the FBI's Behavioral Science Unit, physicians, a criminologist, and the ATF; and the retention of a forensic pathologist. As a result of this aggressive investigation, new information was acquired, including evidence of a motive by Mr. Snyder (that he was engaged in extramarital relationships and likely desired to end his marriage); evidence that contradicted any suggestion that Diane Snyder was contemplating suicide; evidence that the presence of alcohol in Diane Snyder's blood stream on the morning of the incident was completely out of character for her; evidence that Petitioner was seen walking with a limp as he exited his residence and appeared nervous and in a hurry on the morning in question; and evidence that a smoke detector had been rendered inoperative. (Dkt. Entry # 14-10, at 11-15.) Based upon the evidence presented at the hearing, the trial court concluded that the investigation "although extended, was ongoing and eventually uncovered evidence," and that there had been valid reasons for the pre-arrest delay. (Id. at 19.)

On October 17, 2000, a divided en banc Superior Court affirmed the trial court by a vote

of 6 to 3. Judge Cavanaugh, writing for the majority, explained:

> From our review of the precedents, many of which involve homicides for which
> there is no statute of limitations, it is clear that in assessing the performance of
> prosecutors as to delay in initiating charges, there is a distinct characteristic of
> hesitancy to critically evaluate the day-to-day decision making of the office of the
> prosecutor. This, undoubtedly, stems from a recognition that the prosecutor must
> face a stream of current cases which demand immediate attention and are
> subject to intense public scrutiny; that the office typically has limited resources
> which must react to legislative, judicial, media and public demands for priority in
> addressing an ever-changing array of social problems. However, the courts will
> not tolerate any purposeful shelving of a case to gain advantage. While it may not
> be expected that an older unsolved case may always receive the highest priority
> among competing demands, the prosecutor who exhibits studied recognition of
> his ongoing responsibilities to his constituency, should not be censured for a
> good faith election in the performance of his duty.
>
> It should not offend constitutional standards even if it may be said that a given
> case has undergone a period of informed deferral or perhaps even benign
> neglect. So understood, we find that the hearing court did not abuse its discretion
> in finding that the reasons for the delay were valid and the delay was proper.

Commonwealth v. Snyder, 761 A.2d 584, 589 (Pa. Super 2000)(en banc)(emphasis added).

Thus, the majority rested its determination on the absence of evidence of an improper purpose

for the delay in bringing charges, i.e., to gain an unfair tactical advantage. In reaching this

result, Judge Cavanaugh wrote that the court had elected not to employ the due diligence and

negligence standards applied by a Superior Court panel in Commonwealth v. Scher, 732 A.2d

1278 (Pa. Super. 1999).[3]  Judge Cavanaugh further observed that the substantial commitment

---

[3]  Scher was pending before the Pennsylvania Supreme Court at the time the Superior
court issued its October 17, 2000 decision in Snyder.

of public resources by one District Attorney to conduct a renewed investigation "does not depreciate the integrity" of his predecessors "as to the proper urgencies during their occupancy of the office." Snyder, 761 A.2d at 589.

The dissenting opinion, authored by Judge Popovich, while finding "no support in the record to conclude that any District Attorney of Luzerne County, either prior or present, intentionally postponed prosecution to gain a tactical advantage over the appellant," concluded that the motive for the delay was irrelevant. Id. at 596 (Popovich, J., dissenting). Judge Popovich focused instead on the lack of reasons for the delay, and concluded that the record did not contain evidence of "any valid reason why this case lay dormant from 1986 until 1992 before being resurrected by an administration implementing measures (collating existing data, re-interviewing witnesses for new information and leads, and hiring experts) that were just as extant in 1986 thru 1992 as they were post-1992." Id. The dissent reasoned that, absent evidence of a "valid" reason for the delay, the prejudice to Petitioner found by the Pennsylvania Supreme Court compelled the conclusion that the conviction should be vacated. Id. Snyder's petition for allowance of appeal was denied by the Pennsylvania Supreme Court on December 10, 2002. Commonwealth v. Snyder, 813 A.2d 841 (Pa. 2002)(Table).

On March 4, 2004, Petitioner sought relief pursuant to Pennsylvania's Post Conviction Relief Act (PCRA). His PCRA petition asserted various claims of ineffective assistance of trial counsel, including the claims that are presently raised before this Court. The trial court denied

relief on July 21, 2004. The Superior Court affirmed the denial of PCRA relief on August 8, 2006. Allowance of appeal was denied by the Pennsylvania Supreme Court on February 23, 2007.

In his present action, Snyder initially claims that he was denied his right to a fair trial because the eleven-year delay preceding his arrest prejudiced his ability to present a defense. His second claim contends that trial counsel provided ineffective assistance by embracing the testimony of the Commonwealth's arson expert, John Barracato,[4] especially his opinion as to the time line of the fire,[5] and by not impeaching the testimony of the Commonwealth's expert. Snyder claims that counsel was ineffective by failing to (1) call the defense's arson expert witness, Richard Custer; (2) show a videotape of a 1985 recreation of the fire by the Pennsylvania State Police;[6] and (3) introduce a letter from a highly regarded expert, John DeHaan, who challenged the theories relied upon by Barracato as not being scientifically accepted.[7] Snyder adds that this evidence also would have confirmed his alibi defense.

Petitioner's third claim is that trial counsel was deficient for not objecting to the shifting of

---

[4] Barracato is described as being a retired New York City deputy chief fire marshal.

[5] Barracato opined that the fire was slow moving, oxygen deprived, and long-time smoldering.

[6] A copy of the videotape was provided to this Court by Petitioner's counsel during oral argument.

[7] The so-called DeHaan letter was written to a co-prosecutor and provided to the defense counsel during pre-trial discovery.

the burden of proof that occurred "when the jury was led to believe that defense testimony had to be believed or proven by a preponderance of the evidence." (Dkt. Entry # 1, ¶ 12, GROUND THREE.) In his fourth claim, Snyder raises a related claim of ineffective assistance of counsel. He alleges that trial counsel erred by not calling Anthony DiMaria, who was twelve-years old at the time of the incident, to testify that he saw the bedroom window pop out and also witnessed smoke pouring out of an open living room window. This testimony purportedly would have further undermined the Commonwealth's theory that the fire was slow moving and oxygen deprived.

## Discussion

Respondent argues that Snyder is not entitled to federal habeas corpus relief on the grounds that: (1) the delay in bringing Snyder to trial did not violate his constitutional right to a fair trial; (2) trial counsel pursued a reasonable strategy with respect to the Commonwealth's expert testimony; (3) the failure to call Anthony DiMaria as a witness was not prejudicial; and (4) proper jury instructions were given. (Dkt. Entry # 13.)

## Standard of Review

"The Antiterrorism and Effective Death Penalty Act of 1996 [("AEDPA")] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). Specifically, when a federal-law

issue has been adjudicated on the merits by a state court, the federal court reverses only when

the decision was contrary to, or involved an unreasonable application of, clearly established

federal law, as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1).[8] See

generally, Knowles v. Mirzayance, 129 S.Ct. 1411, 1418-19 (2009); Gattis v. Snyder, 278 F.3d

222, 234 (3d Cir. 2002); Moore v. Morton, 255 F.3d 95, 104-05 (3d Cir. 2001).  The Supreme

Court has held that the "contrary to" and "unreasonable application" clauses of § 2254(d)(1)

have independent meaning.  Williams v. Taylor, 529 U.S. 362, 404-405 (2000).  As explained in

Bell:

> A federal habeas court may issue the writ under the "contrary to"
> clause if the state court applies a rule different from the governing
> law set forth in our cases, or if it decides a case differently than we
> have done on a set of materially indistinguishable facts.  The court
> may grant relief under the "unreasonable application" clause if the
> state court correctly identifies the governing legal principle from our
> decisions but unreasonably applies it to the facts of the particular
> case.  The focus of the latter inquiry is on whether the state court's
> application of clearly established federal law is objectively
> unreasonable . . . .

_____

[8] Specifically, 28 U.S.C. § 2254(d)(1) provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law, as
> > determined by the Supreme Court of the United States; . . . .

Bell, 535 U.S. at 694 (citations omitted).

In a recently announced decision, Renico v. Lett, 130 S. Ct. 1855 (2010), the United States Supreme Court, quoting Williams, explained that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." (Id. at 1862) Therefore, a federal court may not grant habeas relief simply because it has concluded in its independent judgment that the state court decision applied clearly established federal law erroneously or incorrectly.[9] (Id.) Rather, the state court application must be objectively unreasonable. Renico added that this distinction creates a substantially higher threshold for obtaining relief under § 2254 and imposes a highly deferential standard for evaluating state court decisions. Simply put, "state-court decisions [must] be given the benefit of the doubt." Id. quoting Woodford v. Viscotti, 537 U.S. 19, 24 (2002) (per curiam).

This deferential standard of review applies to state court decisions on ineffective assistance of counsel claims. Bell, 535 U.S. at 694-98. Furthermore, resolution of factual issues by the state courts are presumed to be correct unless the petitioner shows by clear and convincing evidence that they are not. 28 U.S.C. § 2254(e) (1).

Undue Delay

Snyder initially claims that he was denied his right to a fair trial because the eleven year, two month delay preceding his arrest prejudiced his ability to present a defense. During oral

---

[9] "Whether the trial judge was right or wrong is not the pertinent question under the AEDPA." ( Id. at 1865 n.3.)

argument, counsel for the respective parties concurred that the clearly established Federal law with respect to this claim is set forth in United States v. Lovasco, 431 U.S. 783, 789 (1977), and United States v. Marion, 404 U.S. 307, 325 (1971). Marion, like the present matter, involved a lengthy pre-indictment delay. While observing that the statute of limitations is the primary safeguard with respect to pre-indictment delay, id. at 315 n.8, the Court held that the Due Process Clause of the Fifth Amendment affords criminal defendants the right not to be subjected to oppressive delay. The Court found that pre-indictment delay violates due process if it caused "substantial prejudice" to a defendant's right to a fair trial and "the delay was an intentional device to gain tactical advantage over the accused." Id. at 324. In setting forth this general proposition, the Court acknowledged that not "every delay-caused detriment to a defendant's case should abort a criminal prosecution," and review of such claims "will necessarily involve a delicate judgment based on the circumstances of each case." Id. at 324-25.

The subsequent ruling in Lovasco, emphasized that prejudice alone was not sufficient to establish a denial of due process. Instead, "the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." Lovasco, 431 U.S. at 790. The Court explained that when considering a claim that an indictment was delayed to conduct further investigation, it must be determined whether the government's delay "violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,'

and which define 'the community's sense of fair play and decency.'" Id. (citations omitted).

Pertinent to the case at hand, the Court held that fundamental conceptions of justice are not

violated by prosecutors waiting until they have sufficient probable cause to seek an indictment.

Id. at 790-91.  The Court added:

> In our view, investigative delay is fundamentally unlike delay undertaken by the Government solely "to gain tactical advantage over the accused," United States v. Marion, 404 U.S., at 324, precisely because investigative delay is not so one-sided. Rather than deviating from elementary standards of "fair play and decency," a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt. Penalizing prosecutors who defer action for these reasons would subordinate the goal of "orderly expedition" to that of "mere speed," Smith v. United States, 360 U.S. 1, 10, (1959). This the Due Process Clause does not require. We therefore hold that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time.

Id. at 795-96.

Citing Marion, the Third Circuit Court of Appeals has recognized that a criminal

defendant pursuing a claim of prejudicial pre-indictment delay has the burden of proving "(1)

that the government intentionally delayed bringing the indictment in order to gain some

advantage over him, and that (2) this intentional delay caused the defendant actual prejudice."

United States v. Ismaili, 828 F.2d 153, 167 (3d Cir. 1987).  Both prongs of this test must be

satisfied.  United States v. Sebetich, 776 F.2d 412, 430 (3d Cir. 1985).

Petitioner's counsel argues that, unlike Marion and Lovasco, there was a finding of

prejudice in the present matter and the delay in prosecution was much greater. Petitioner

further contends that the Pennsylvania Supreme Court's finding of actual prejudice in Snyder's

case is a conclusion of fact and therefore binding on this Court. Counsel for the Commonwealth

described the state Supreme Court's finding of actual prejudice as being a mixed finding of law

and fact and therefore not entitled to the same deference afforded to state court factual

determinations.

Of course, considerable deference must be given to the legal and factual determinations

made by state courts. Palmer v. Hendricks, 592 F.3d 386, 391-92 (3d Cir. 2010)(quoting

Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004)). A conclusion of a factual issue by a

state court is presumed to be correct unless otherwise refuted by clear and convincing

evidence. Because no evidence has been presented by Respondent to contradict the state

high court's finding of prejudice, it is binding if it is regarded as a finding of fact.

But even if it constitutes a mixed finding of law and fact, it may be accorded deference in

this habeas corpus proceeding. See Palmer, 592 F.3d at 399. The prejudice prong of the due

process inquiry was resolved in Snyder's favor in the state court proceedings, and that

determination will not be reexamined here.

The dispositive question on this claim, therefore, is whether the state court's

determination that pre-charge delay offends due process only when intended to gain an unfair

tactical advantage is contrary to or an unreasonable application of clearly established federal

law set by the nation's high Court. As to the "contrary to" prong of habeas corpus review, Snyder has not shown a directly applicable Supreme Court precedent in conflict with the state court's ruling. The question, therefore, is whether the state court decision is an unreasonable application of Supreme Court decisional law.

The premise of the Superior Court's holding is that it is the "purposeful shelving of a case to gain advantage" that violates due process. Snyder, 761 A.2d at 589. The state court observed that "[i]t should not offend constitutional standards even if it may be said that a given case has undergone a period of informed deferral or perhaps even benign neglect." Id.

Petitioner argues that clearly established federal law does not require a finding of deliberate misconduct when addressing the intentional delay prong. Rather, Petitioner suggests that if the delay constituted a violation of the fundamental conception of justice, regardless of the motivation for the delay, an award of federal habeas corpus relief is warranted. Petitioner additionally argues that by letting the criminal investigation lie dormant for several years, there was a lack of due diligence by the District Attorney's office which offends community standards of fair play. He contends that the eleven year pre-arrest delay that occurred in his case was "not investigative delay" as contemplated in Lovasco because there was a seven year period during which "no investigation took place."[10] (Dkt. Entry # 1, ¶ 12, GROUND ONE (a).)

---

[10] Specifically, the seven year period ran from 1986 to 1993.

Snyder advances an interesting premise for a rule of constitutional dimension, but the Superior Court's finding that there must be intentional delay to gain a tactical advantage cannot be said to represent an unreasonable application of clearly established federal law. First, the Supreme Court in <u>Marion</u> and <u>Lovasco</u> articulated a two-part test comprised of prejudice <u>and</u> purposeful delay to gain a tactical advantage. The <u>Lovasco</u> Court's reference to delay that offends "'the community's sense of fair play and decency,'" <u>Lovasco</u>, 431 U.S. at 790 (citation omitted), was made in relation to its observation that "investigative delay is fundamentally unlike delay undertaken by the Government solely 'to gain tactical advantage over the accused' . . . ." <u>Id.</u> at 795 (citation omitted). And second, our Court of Appeals has understood <u>Marion</u> and <u>Lovasco</u> to require a showing of intentional delay for the improper purpose of gaining an unfair advantage. <u>See</u> <u>Ismaili</u>, 828 F.2d at 167.

The Pennsylvania Superior Court's October 17, 2000 decision applied the <u>Marion</u> and <u>Lovasco</u> standards in addressing Petitioner's due process claim. It interpreted <u>Marion</u> and <u>Lovasco</u> as not imposing a due diligence standard, as presently suggested by Petitioner's counsel, but rather holding that it must be determined that the delay was intended to gain an unfair tactical advantage. The Superior Court noted that the <u>Marion</u> decision relied upon the absence of evidence that there was intentional delay to gain a tactical advantage, and <u>Lovasco</u> "opined with approval" that investigative delay until the prosecutor is satisfied that he could file charges was consistent with notions of fair play and decency. <u>Snyder</u>, 761 A.2d at 587. Given

the pronouncements in <u>Marion</u> and <u>Lovasco</u>, the Superior Court had an objectively reasonable basis for finding that only purposeful delay sufficed to support a due process violation.

Both the state trial court and the intermediate appellate court concluded that there was no evidence of purposeful delay for purposes of gaining an unfair advantage. Indeed, even Judge Popovich's dissenting opinion acknowledged the absence of evidence supporting an inference that the Luzerne County prosecutors "put the case on the shelf" to disadvantage Snyder. Accordingly, Petitioner's claim of entitlement to federal habeas corpus relief on the basis of prejudicial pre-indictment delay will be denied.

Ineffective Assistance

Snyder asserts that trial counsel provided ineffective assistance by embracing the testimony of the Commonwealth's arson expert, John Barracato, especially his opinion as to the time line of the fire. Petitioner elaborates that counsel was deficient for failing to (1) call the defense's arson expert witness, Richard Custer; (2) show the State Police fire re-creation video; and (3) introduce the DeHaan letter which purportedly claimed Barracato's time line evaluation was based upon methods which were not scientifically accepted. Snyder also asserts that counsel was ineffective for failing to call a neighborhood youth who witnessed the fire to testify in further support of Snyder's time line defense.

Petitioner's ineffectiveness claims were raised in his timely PCRA motion, which was denied by the Court of Common Pleas on July 21, 2005. In a decision dated August 8, 2006,

-16-

the Superior Court affirmed the denial of PCRA relief.  With respect to the above described

claims of ineffective assistance, the Superior Court noted that Snyder's trial counsel gave

PCRA testimony in which he indicated that although Custer would have given testimony which

was helpful to Snyder, Custer "would have blown away the timeline which was established by

the Commonwealth [via Barracato's direct testimony], which supported us." (Dkt. Entry # 1-2 at

83.)  Counsel further testified that if he had allowed Custer to offer testimony it would have

opened the door for the Commonwealth to recall Barracato and clarify the problems created by

his direct testimony.  (Id. at 84.)  Despite the fact that this strategy ultimately proved to be

unsuccessful, trial counsel stated that it was nonetheless reasonable.  With respect to the

testimony of the youthful witness, the Superior Court noted that Petitioner's trial counsel gave

testimony at the PCRA hearing that DiMaria was not called as a witness for "the same reasons,

. . . namely the concern bringing into question the accuracy of the timeline established by the

Commonwealth's witnesses." (Id. at 87).

     In Strickland v. Washington, 466 U.S. 668, 688 (1984), the United States Supreme

Court established a two-pronged test for habeas petitioners seeking relief on the basis of

ineffective assistance of counsel.    First, a petitioner must prove that counsel's performance

was deficient.  See Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001).  That is, he must show

that counsel's "representation fell below an objective standard of reasonableness."  Strickland,

466 U.S. at 688.  There exists a "strong presumption" that trial counsel's performance was

reasonable and might be considered sound trial strategy.  <u>Jermyn</u>, 266 F.3d at 282 (quoting

<u>Berryman v. Morton</u>, 100 F.3d 1089, 1094 (3d Cir. 1996)); <u>Strickland</u>, 466 U.S. at 690.

Second, a petitioner must show that he was prejudiced by the deficient performance.

<u>Strickland</u>, 466 U.S. at 687.  The prejudice test is whether there is a reasonable probability that,

but for the deficient performance, the outcome of the proceedings would have been different.

<u>Id.</u> at 694.  A reasonable probability is one that is "sufficient to undermine confidence in the

outcome."  <u>Strickland</u>, 466 U.S. at 694.  "Without proof of both deficient performance and

prejudice to the defense . . . it could not be said that the sentence or conviction resulted from a

breakdown in the adversary process that rendered the result of the proceeding unreliable, and

the sentence or conviction should stand."  <u>Bell</u>, 535 U.S. at 695 (internal quotations and citation

omitted).

Where there is a reasonable basis for a tactical decision made by defense counsel, a

finding of ineffective assistance cannot be reached.  <u>See</u> <u>Burger v. Kemp</u>, 483 U.S. 776 (1987).

In other word, "substantial deference is to be accorded counsel's tactical decisions."  <u>United</u>

<u>States v. Wiener</u>, 127 F. Supp. 2d  645, 648 (M.D. Pa. 2001).  Furthermore, "reviewing courts

must be deferential in their scrutiny and scrupulously avoid the distortions of hindsight by

viewing performance from counsel's perspective at the time."  <u>Everett v. Beard</u>,  290 F.3d 500,

509  (3d Cir. 2002).  Finally, "because the <u>Strickland</u> standard is a general standard, a state

court has even more latitude to reasonably determine that a defendant has not satisfied that

standard." <u>Knowles v. Mirzayance</u>, 129 S. Ct. 1411, 1420 (2009).

When the Pennsylvania state courts reviewed the claims raised by Snyder, <u>Strickland</u>'s familiar two-pronged test was the "clearly established federal law" applicable to ineffective assistance of counsel claims. Under Pennsylvania state jurisprudence, a three-prong test is applied to ineffective assistance of counsel claims, but is, in substance, identical to the <u>Strickland</u> test. <u>See</u>, <u>e.g.</u>, <u>Commonwealth v. Johnson</u>, 771 A.2d 751, 757 (Pa. 2001). The Third Circuit Court of Appeals has held that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to <u>Strickland</u>. <u>Jacobs v. Horn</u>, 395 F.3d 92, 107 n.9 (3d Cir. 2005); <u>Werts v. Vaughn</u>, 228 F.3d 178, 204 (3d Cir. 2000). Thus, under § 2254(d)(1), the relevant inquiry in addressing an ineffectiveness claim that has been adjudicated on the merits is whether the Pennsylvania state court decision involved an unreasonable application of <u>Strickland</u>. <u>Jacobs</u>, 395 F.3d at 107 n.9; <u>Werts</u>, 228 F.3d at 204.

This is not a case where trial counsel neglected to obtain a needed expert or failed to investigate a witness or a possible defense. Rather, it boils down to an informed choice made by an experienced criminal defense attorney. The state courts found that defense counsel made a determination that his client's best interests would be served by pursuing a defense based solely upon the time line established by the Commonwealth's own expert witness, which he felt would lead the jury to conclude that Snyder could not have started the fire.

Petitioner has not shown that the state court's rejection of his ineffective assistance of

counsel claims represented an unreasonable application of clearly established federal law. The state courts found that there was a tactical basis for trial counsel's decisions, and that factual determination is binding in federal court. See Berryman v. Morton, 100 F.3d 1089, 1095 (3d Cir. 1996). "Under the doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard," Knowles, 129 S. Ct. At 1420, Snyder's claim that his experience defense counsel was ineffective fails. As explained in Price v. Wynder, 350 F. App'x. 692, 695 (3d Cir. 2009), "[w]ith respect to the PCRA court's application of federal law, Strickland mandates deference to tactical decisions made by trial attorneys and [the habeas statute] mandates deference to state court decisions interpreting Strickland." It was reasonable in this case for the state courts to conclude that Strickland affords counsel discretion to make judgments as to what information to impeach, and what evidence may be used to a client's advantage if not impeached. The state courts found that defense counsel articulated a reasonably sound basis for his approach to the time line evidence, and that finding is not unreasonable. See Henderson v. DiGuglielmo, 138 F. App'x. 463, 470 (3d Cir. 2005) ("Counsel's decision not to introduce testimony potentially in conflict with the central defense strategy is not unreasonable.").

Accordingly, with respect to the decision of trial counsel to base Snyder's defense on the time line created by Barracato, the state court's finding that counsel's performance was reasonable has not been shown to be an unreasonable application of Strickland. Thus,

Petitioner is not entitled to habeas corpus relief on the basis of ineffective assistance of counsel.

Jury Instructions

_____Petitioner's remaining claim is that trial counsel was deficient for not objecting to the shifting of the burden of proof that occurred "when the jury was led to believe that defense testimony had to be believed or proven by a preponderance of the evidence." (Dkt. Entry # 1, ¶ 12, GROUND THREE.) During the oral argument conducted in this matter on April 20, 2010, when questioned by this Court as to this jury instruction claim, Petitioner's counsel responded that he was withdrawing it based upon reasoning set forth in opinions by the United States Court of Appeals for the Third Circuit. Accordingly, this claim will not be addressed.

Conclusion

Snyder has not shown an entitlement to federal habeas corpus relief. An appropriate Order will enter.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States Circuit Judge
(Sitting by Designation on the District Court)

## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

KEITH E. SNYDER,                        :
                                        :
            Petitioner,                 :
                                        :   CIVIL NO. 3:CV-07-825
      v.                                :
                                        :   (JUDGE VANASKIE)
EDWARD KLEM,                            :
                                        :
            Respondent.                 :

## ORDER

_____NOW, THEREFORE, THIS 1st DAY OF JULY, 2010, in accordance with the

accompanying Memorandum, IT IS HEREBY ORDERED THAT:

     1.     The petition for writ of habeas corpus is DENIED.

     2.     The Clerk of Court is directed to CLOSE the case.

     3.     Petitioner is granted a certificate of appealability on the issue of pre-

charge delay.


s/ Thomas I. Vanaskie
_____
Thomas I. Vanaskie
United States Circuit Judge
(Sitting by Designation on the District Court)